## LEONARD v. CUTLER-HAMMER MFG. CO. et al.

### (Circuit Court, S. D. New York. November 1, 1907.)

PATENTS—INVENTION—CONTROLLERS FOR ELECTRIC MOTORS.

The three claims of the Cutler patent, No. 668,140, and claims 1, 6, and 11 of the Leonard patent, No. 673,274, both for circuit controllers for electric motors, are substantially identical, and such claims, as well as claims 7 and 10 of the Leonard patent, are too broad, and, in view of the prior art, are void for lack of invention.

In Equity. On final hearing.
See 154 Fed. 920.

Kenyon & Kenyon (William Houston Kenyon and Alan D. Kenyon, of counsel), for complainant.

Seward Davis (Charles Neave, W. Clyde Jones, and Robert Lewis Ames, of counsel), for defendants.

HOLT, District Judge. This is a suit in equity to restrain the alleged infringement of two United States patents, Nos. 668,140 and 673,274, issued to the complainant, for improvements in controllers for electric motors. The first patent was applied for by H. B. Cutter, and

the second by H. Ward Leonard, the complainant. While both applications were pending in the Patent Office, an interference was declared between them. Thereupon Leonard bought Cutter's rights in his invention, and made default in the interference, and afterwards both patents were issued to Leonard. The complainant, by stipulation on the record, relies only on the three claims of the Cutter patent, and upon claims 1, 6, 7, 10, and 11 of the Leonard patent. The defense is a denial of invention by Cutter or the complainant and a denial of infringement by the defendants.

In my opinion, claims 1, 6, and 11 of the Leonard patent are substantially identical with the three claims of the Cutter patent. Assuming that these claims show patentable invention, obviously the first invention anticipated the other. I cannot see that it is important, so far as the questions involved in this case are concerned, to determine which invention was prior. Leonard owns both patents. The claims of one are anticipated by those of the other, which are similar. The Cutter patent was applied for first, and was granted first; but the evidence tends to show that Leonard was the first inventor of the combination claimed. The respondents' counsel argues that as Leonard purchased the invention from Cutter, abandoned the pending interference, and had the Cutter patent first issued to him, he is estopped from denying that the Cutter patent has priority; but, in my opinion, although the facts that the Cutter patent was applied for before the Leonard patent and was granted before the Leonard patent raise a presumption that the Cutter patent was the first invention, the presumption is not conclusive, and, notwithstanding the fact that Leonard took out both patents, I think it was still open to proof in this case that the Leonard patent was the prior invention. I will assume, therefore, that the Cutter patent was invalid, although, in my opinion, it is immaterial in this case to determine which patent anticipated the other.

Claims 1, 6, and 11 of the Leonard patent are as follows:

"1. In a circuit-controller, the combination of two independently-movable switch-levers, an electroresponsive device for controlling one of said levers and responding to failure or abnormal decrease of current to release said lever, means for moving said lever when released to affect the circuit, an electroresponsive device for controlling the other lever and responding to abnormal increases of current to release said second lever, and means for moving said lever when released to affect the circuit."

"6. In a circuit-controller, the combination of two movable switch members for controlling the same circuit, and two electroresponsive devices for controlling said switch members, each switch member and its electroresponsive device operating automatically and independently of the other to affect the same circuit, one when excessive current flows and the other upon failure or abnormal decrease of current."

"11. In a circuit-controller, the combination of two movable switch members for controlling the same circuit, said members being adapted to be held in a normal operative position and operating respectively to affect the circuit upon the occurrence of overload and underload currents, and overload and underload electroresponsive devices functionally connected with said switch members and operating independently of each other to release the overload and underload switch members respectively."

The use, in a circuit-controller, of an overload circuit-breaker, with an electroresponsive device for controlling it, operating automatically, and in the same manner as shown in the Leonard patent, was old and

well known before Leonard's patent. It is shown in the Wurts and in the Harrington patents. The underload circuit-breaker with an electroresponsive device, shown in the Leonard patent, is also old. It is shown in the Blades, the Barriett, and the Henshaw patents. It would, of course, have involved no invention to have applied both the overload circuit-breaker, with its attendant electroresponsive device, and the underload circuit-breaker, with its electroresponsive device, without any connection between them, to the same rheostat. That is what is suggested in the article in the Electrical World for February, 1897, in evidence, and seems to me a perfectly obvious thing to do. The first, sixth, and eleventh claims, therefore, are, in my opinion, invalid for lack of invention, unless the term "combination," as used in those claims, means something more than connecting them to the same apparatus. But such an application of underload and overload circuit-breakers to the same rheostat is, in a broad sense, a combination of them, and therefore, in my opinion, the first, sixth, and eleventh claims are too broad, and are invalid.

Claims 7 and 10 of the Leonard patent are as follows:

"7. In a circuit-controller, the combination of two levers pivotally connected, a spring constantly tending to move said levers, a latch for holding one of said levers in its normal position, an electroresponsive device for releasing said lever, and the other lever carrying a keeper and normally held by an electro-magnet."

"10. In a circuit-controller, the combination of an overload-switch, a latch for holding said switch, a solenoid-magnet in the main current having a moving core for releasing said switch, and an underload-switch functionally connected with the overload-lever and normally held against a spring by a second magnet."

It will be seen that claim 7 is for substantially the same combinations as those claimed in claims 1, 6, and 11, with the specific claim added for two levers pivotally connected, and a spring constantly tending to move said levers. Claim 10 is for substantially the same combinations, with the specific claim added for an underload lever functionally connected with an overload lever. In short, one claim is for the pivotal and the other for the functional connection of the switches. But both of these connections are shown in the previous Leonard patent, No. 368,008, and in the Gibbs patent, so that, in my opinion, claims 7 and 10 are too broad. I cannot see any invention in having both switches placed upon one pivot, instead of being upon two separate pivots; but at all events the patents cited show that it was not new in the art. I think that the Leonard patent is probably valid for the particular arrangement of the levers which is shown in it, and which is particularly described in some of the claims not relied on in this suit. The valuable feature of this device consists in such an arrangement of the levers that the underload circuit-breaker is brought to the starting point before the overload circuit-breaker is closed. This is important to prevent injury to the armature from a full current being suddenly turned on. This result is accomplished in the Leonard patent by having the underload switch carry with it the overload switch as it is moved over towards the starting point, and by having a handle affixed to the underload switch

only, with the result that the underload switch is moved around to the starting point while pushing the overload circuit-breaker down to its closed position. As there is no handle on the overload switch, the operator naturally takes hold of the handle of the underload switch to move the overload switch to its closed position. But, in fact, it is possible, with the Leonard device, to bring the overload switch back by the hand to its closed position while leaving the underload switch at the point of least resistance; whereas, in the defendants' device, by means of a latch interlocking the two switches, the overload switch cannot be moved back into its closed position until the underload switch is moved over to the point of full resistance.

The idea of arranging the switches so that the overload switch could not be brought back to its closed position until the underload switch is carried over to the starting point was old. It is shown in the Hill and in the Dunn patents. I think that the particular method in which the result is accomplished in the Leonard patent was patentable; but, in my opinion, the claims of the patent which can be upheld at all are for a very narrow invention, and the patentee's rights under it must be confined to instruments substantially using the same device. The defendants had a right to accomplish the same result by appropriate means not infringing the particular device adopted by the complainant. Whether the defendants' device infringes those claims in the complainant's patent which include the arrangement for moving the overload switch to its normal position by the underload switch, before the latter assumes its normal position, it is unnecessary to determine in this case. The complainant relies only on claims 1, 6, 7, 10, and 11, and, in my opinion, all of those claims are invalid for the reasons stated.

A very great amount of testimony has been taken in this case, and the records and briefs submitted are extremely voluminous. A great deal of the testimony relates to the subject of prior use; but as, in my opinion, the prior patents and publications offered in evidence are decisive in the case, it is unnecessary to consider in detail the questions arising upon the evidence as to prior use.

My conclusion is that the complainant's bill should be dismissed on the merits, with costs.